EXHIBIT 1

To:
Anthony M. Paglia Esquire
Anthony Paglia Injury Lawyer LTD
255 E. Warm Springs, Suite 100
Las Vegas, Nevada 89119

702.830.7070 Office
702.522.0504 Fax
702.721.9529 (9LAW) mobile
anthonypaglia.com

Case of:  Glaster v. Dollar Tree – Trip and Fall

**Preliminary Expert Report of:  Retail Litigation Consultants LLC**

Mr. Paglia,

I am providing you with my opinions and conclusions on the above-referenced case.  I will state opinions regarding a safe shopping environment, maintaining such an environment, and the applicable standards within the Retail Trade Industry.

This report is subject to change upon review of further evidence and testimony not available at this time.  I would like the opportunity to prepare a Supplemental Report should more evidence and/or information become available.

You retained me to review a trip hazard and fall injury that occurred at the Dollar Tree Store located at 9890 Maryland Parkway, Las Vegas, NV involving your client Ms. Glaster on March 14, 2015 at approximately 515pm.

I, John Peterson, of RLC (Retail Litigation Consultants LLC), reviewed the materials listed in this report and prepared this report.  I have been in the Loss Prevention/Security profession since 1990.  I have managed safety and security, applied safety and security principles to areas of my control, and I have taught and trained all levels of employees in various companies.  I have responded to and investigated customer and employee accidents throughout my career.

My opinions and observations contained in this report are derived from an accumulation of experience in the retail trade industry.  In addition, my continued education in risk management, loss prevention, and my review of applicable references and standards that focuses on providing a safe customer and employee environment within a property where business and employment is conducted within the industry.

## Table of Contents

1)  Cover Page                                     Page 1

2)  Table of Contents                              Page 2

3)  Documents and Material Reviewed                Page 3-4

4)  Summary of Opinions                            Page 5

5)  Questions and Factors Considered               Pages 6

6)  Authoritative References 1 - 7                 Page 7 - 10

7)  Discussion 1                                   Page 10 - 11

8)  Discussion 2                                   Page 11 – 12

9)  Summary                                        Page 14 - 15

10) End of Report and Signature                    Page 15

## DOCUMENTS AND MATERIALS REVIEWED:
- Photographs (2) from Plaintiff
- Site Visit at Dollar Tree Store on Friday, June 26, 2015
  - Plaintiff's Account from Site Visit


<u>Additional Documents and Publications referenced or relied upon, but not limited to:</u>

- The Loss Prevention Foundation Certification Course
- NAICS (North American Industry Classification System) Industry by Supersector and NAICS Codes
- NAICS 2012 Industry Code Guide
- ANSI/ASSE Z690.3-2011 Risk Assessment Techniques
- ANSI/ASSE Z690 Series
- ASTM F1637 Safe Walkway Standards
- ANSI/NFSI B101.6-2012 Standard Guide For Commercial Entrance Matting In Reducing Slips, Trips And Falls
- ASTM F1694 Standards for Composing a Walkway Surface Investigation
- ASSE - Accident Investigation Techniques - Jeffery S. Oakley PHD, CSP
- OSHA – Standards for Housekeeping & General Duty Clause
- OSHA Department of Labor Standards 29 CFR Part 1910 Walking and Working Surfaces
- OSHA Small Business Handbook OSHA 2209 – 02R 2005
- Security and Loss Prevention Management 2nd edition 1999
- Slips, Trips, and Missteps and Their Consequences 2nd edition
  - Dr. Gary M Bakken – Founder and Principal of Analytica Systems International, Inc. (ASI).  Human Factors, Ergonomics, and Safety.  Certified professional erganomist
  - H. Harvey Cohen Ph.D. – President of Error Analysis, Inc. Human Factors and Safety
  - Jon R. Abele Esq. – Licensed Attorney in Arkansas and Colorado
  - Alvin S. Hyde Ph.D. – Physiologist and M.D.
  - Cindy A LaRue – Senior VP for Error Analysis, Inc.
  - Published by Lawyers & Judges Publishing Company, Inc.
- Risk Assessment 1st Edition by:
  - Etti G. Baranoff, PhD, FLMI - Associate Professor of Insurance and Finance – Virginia Commonwealth University
  - Scott E. Harrington, PhD - Professor of Health Care Systems and Insurance and Risk Management - The Wharton School - University of Pennsylvania
  - Gregory R. Niehaus, PhD - Professor of Insurance and Finance - Moore School of Business - The University of South Carolina
  - Printing by: American Institute for Chartered Property Casualty Fifth Printing October 2008 Underwriters/Insurance Institute of America 720 Providence Road, Suite 100 Malvern, Pennsylvania 19355-3433
- Signs and Barriers Healthcare Hazard Control and Safety Management, Third Edition
- Preventing Slips Trips and Falls in Wholesale and Retail by NIOSH
- Slip, Trip, and Fall Prevention for Health Care Workers by NIOSH Department of Health and Human Services – National Institute for Occupational Safety and Health
- University of Wisconsin Preventing Slips Article by Safety & Health Engelmann Hall 270 2033 E. Hartford Avenue Milwaukee, WI 53211 (414) 229-6339
- Americans with Disabilities Act A4.5.1
- Building Code Section 3402 – Safe Conditions
- Research into the behavioral aspects of slips and trip accidents and incidents
  Part 1: Literature review - Prepared by Rossmore MCA Limited for the Health and Safety Executive 2005
- Accident Investigation – Digging for Root Causes ISRI Safety Council May 12, 2009 Zero Accident Consulting LLC



- Long Island Production Training Video Series – Investigating Accidents – Used by SCATS of Nevada
- Stanford University – Environmental Health and Safety Slip, Trip, and Fall Prevention   Guide 1/2008
- The Zenith Workers Compensation Specialists – Risk Management Bulletin – Cleaning Restaurant Floors RM103GEN 1 – 3
- Armstrong Floor Experts - Commercial Flooring – General Maintenance for Flooring – Fundamentals Pages 1-12
- ERI Safety – 4635 Hospitality Series: Preventing Slips & Falls 2003
- Loss Buster Blog – Slippery when wet – A Mop Bucket Mentality - Pages 1-4
- OH&S Occupational Health & Safety – Clearing a Path to Floor Safety by Michael Fraley Sept 1 2009 Pages 1-3
- Parish Cleaning & Janitorial – The Proper Method to Mop a Floor Pages 1-2
- Johnson Diversity, a leading global provider of commercial cleaning, sanitation and hygiene solutions for business, outlines an inspection process in their "Standards of Care guidelines for Commercial Floor Maintenance." 2006  - Now Called Diversey Care or Sealed Air as of 2011
- ISSA - International Sanitary Supply Association - Minimizing Slips, Trips, and Falls
- Safety Sign Marking Requirements - Grainger Safety
- NFPA 70E and Citations for Not Following Voluntary Standards - May 16, 2005 John C. Klingler, P.E.
- Over Used Signage Article by - Health and Safety Authority of Ireland
- OSHA 10 Hour signs, signals, and tags
- Article - Boston Globe where OSHA investigates civilian accident

I base my extrapolations in this case, in part, upon the following general sources of information, knowledge, and experience

1. My years of employment experience working in the retail trade industry and the knowledge I have of Policy and Procedures
2. The lessons and applications of Risk Management according to Associates in Risk Management, Risk Assessment 1st Edition, and other publications on Risk Management
3. The lessons and applications of  Loss Prevention according to the Loss Prevention Certification Course offered by the Loss Prevention Foundation
4. The four Elements required by OSHA to successfully achieve a proper Accident/Safety Prevention Program
5. OSHA Good Housekeeping 1910.22 Regulations and Classes offered by OSHA
6. The Design and Model of the Risk Management Model along with applicable published Standards
7. My understanding of and interpretation of Regulation, Code, and Laws
8. My professional experiences in security and loss prevention management, safety and academic research and instruction
9. My response and review of hundreds of accidents
10. My professional experiences in maintaining, modifying, and managing safety to prevent accidents from occurring
11. My review of records and documents provided by Plaintiff and Defendant as listed in this report and documents produced thus far
12. My review, interpretation, and understanding of testimony offered by deponents thus far



## Summary of Opinions

**Opinion #1** – More likely than not, a proper Risk Assessment did not take place prior to the accident in question occurring.

**Opinion #2** – The "activity", specifically to this case, the use of floor U-Boat Truck carts and stocking merchandise, requires separation from activity of pedestrians entering and shopping in a store.

**Opinion #3** – The cause of the accident was the Plaintiff contacting a U-Boat Truck Cart that was placed in front of a walkway in such a manner as to cause a tripping hazard.

**Opinion #4** – The probability of a customer coming into direct contact with a U-Boat Truck Cart in a walkway is high when the carts are in a position or location that would be <u>unexpected</u> by a pedestrian.

**Opinion #5** – More likely than not, the Defendant did not maintain a safe shopping environment while operating a store in accordance with approved methods that the retail trade industry deems appropriate in order to separate customers from dangerous conditions.

**Opinion #6** – The retail trade industry has customary and reasonable prevention methods that when properly managed, prevent injury. It is likely the Defendant ignored the recommended methods the industry uses to prevent contact with customers. Consequently, the Defendant allowed a U-Boat Truck cart to pose a dangerous trip hazard to its customers on the date in question. In doing so, the defendant fell below the standard of care and subsequently caused the Plaintiff injury.



**Relevant questions used to form opinions -**

1) Was there a hazard or hazardous condition present that caused the Plaintiff to fall?
2) If there was a hazard or hazardous condition, was the condition present in such a way that the Defendant should have known about it or remedied it prior to the Plaintiff contacting the condition?
3) Did the Plaintiff act unreasonably prior to and when contacting the hazardous condition if there was one?
4) Did the Defendant adhere to industry standards, best practices, and protocols that the industry recognizes as ways to remedy and negate hazards urgently and reasonably in a shopping environment to prevent incidents such as a slip and fall accident in similar circumstances?
5) Did the Defendant act unreasonably when comparing what the Defendant did or did not due to the measures and practices customarily observed within the industry?

**Key factors considered in my analysis thus far:**

- What is reasonable and customary within the retail trade industry in an environment such as a general merchandise or grocery store setting;
- What is reasonable and customary methods for stocking merchandise within a store environment that is in operation with customers present;
- Whether or not, the Defendant had a plan to negate pedestrian contact with known hazards in the walkways;
- The actions and non-actions of the Plaintiff and the employees of Defendant, and;
- Whether or not the property comports to what the industry deems proper industry protocols, policies, and procedures with respect to negating hazards and ensuring a safe shopping environment.

**NOTE – rather than repeatedly pasting references and text throughout the report the references are identified by number, and will be referred to by number when appropriate throughout the text.**

There are authoritative references (See Example and Lists Below) that apply to a case involving a slip, trip, and fall on a walkway in use for pedestrians. These references provide a basis on what the industry deems appropriate and what methods, processes, and responsibilities owners of commercial businesses must take in order to reasonably protect pedestrians that visit their properties from harm. These references apply to all commercial businesses worldwide. There are international standards that support the information and reference that the information is used worldwide.
(See International Organization for Standardization (ISO) References and (ANSI) American National Standards Institute ANSI/*ASSE Risk Management*)

Example Reference from ANSI z690 Series -
*This standard is adopted from ISO 31000:2009, an international standard also titled "Risk Management Principles and Guidelines". This document was approved as an international standard*



Retail Litigation Consultants LLC

on November 15, 2009.  In addition to ISO 31000 there are also two other documents addressing risk management and risk assessment being adopted as American National Standards:
ISO Guide 73:2009, Risk Management – Vocabulary IEC/ISO 31010:2009, Risk Management – Risk Assessment Techniques

During May 2010 the United States TAG (Technical Advisory Group) to ANSI for risk management reached consensus that these three documents should be adopted as American National Standards.

Due to the ongoing significant interest being focused on risk management at the international level, additional consensus was reached that there should also be a committee looking at risk management standards for the United States.

Such a committee would function under accreditation of ASSE (American Society of Safety Engineers) as a standards developing organization or (SDO).

## Authoritative References

### Reference #1 ANSI Standards

- International Standard IEC/FDIS 31010 Risk Management Process – 4.3.6 Monitoring and Review

- ANSI/ASSE Z690-2-31000 Section 4.0 – 4.5 discusses the principles and guidelines for Risk Management including Section 4.5, which specifically addresses Review and Monitoring.

**The Risk Management Model**



Figure 1 – Contribution of Risk Assessment to the Risk Management Process

### Reference #2 - Slips, Trips, and Missteps and their consequences Book Reference:

- Page 24 – 2.10 Preventing Slips and Trips
  - *In the field of safety engineering there is an axiom that places the highest level of responsibility for hazard elimination or control on the entity with the greatest capacity for eliminating or controlling the hazard.*

- Page 47 Chapter 3 Information Processing
  - *The less the individual knows about a system's risk, the more likely they are to be involved in an incident and to suffer injury*



- *Most planning for facility designs, procedures, instructions, and so forth is based on the assumption that individuals integrate the risk benefit information according to some rationale decision making set of rules. <u>They do not.</u>*

- Page 103 – 9.4 Physical Obstacles
  - *According to Zohar, who plotted "anthropometric bumping profiles," we are three to five times more likely to bump into something at floor level than at shoulder or hip level.*
  - *Poorly located furniture that impedes pedestrian walkway flow is considered a physical obstacle.*

- Page 235 – 26.3 Perceptual – Cognitive Factors in Warning Adequacy and Effectiveness
  - *Generally pedestrians expect the typical built walkway surface to remain uniform and be reasonably safe.*
  - *If a hazard exists, the hazard must be perceived or recognized before the pedestrian can take action to avoid it*
  - *Generally a fall is initiated when a condition violates a pedestrian's normal expectations or when sufficient cues are misunderstood or not available.*
  - *Trips often occur as the result of impediments that are unmarked and provide no visual cue to alert the pedestrian to their presents. Example situations leading to trip incidents include:*
    - *Unmarked or deceptively marked wheel stops*
    - *Unmarked or deceptively marked speed bumps*
    - *Unmarked or deceptively marked ramp edges*
    - *Uplifts or sidewalks, or*
    - *<u>Items dropped or placed in areas where they would otherwise NOT be expected</u>*
  - *Any vertical projecting object in a pathway presents a potential trip hazard*

- Page 242 – 26.13 Conclusions
  - *Generally speaking, warnings and markings <u>should not be</u> relied upon as the <u>sole or principal means for preventing</u> pedestrian falls. Rather, safe designs or <u>elimination of potential dangers</u> <u>should be utilized whenever practical</u>.*
  - *If the danger cannot be eliminated the next practical approach is <u>to prevent contact with the danger through an appropriate barrier guard or barricade</u>.*
  - *Pedestrian warnings and markings should only be used as a last resort.*
  - *Warnings and markings are <u>NOT permanent or fail-safe solutions</u>, but rather rely upon the pedestrian's often times limited abilities and capabilities to detect, understand, and appropriately respond.*



Retail Litigation Consultants LLC

AMP000326

<u>**Reference #3 - Healthcare Hazard Control and Safety Management 3ʳᵈ Edition Book:**</u>

- Chapter 5 Facility Safety  - Slip, Trip, and Fall Prevention
    - Page 240 Equipment Carts
        - Never leave equipment carts or supplies in a location that creates a hazard or provides access to a cart's contents.

<u>**Reference #4 Occupational Health and Safety Program Department of Environmental Health and Safety - Stanford University, January 2008:**</u>

- Trip Hazards
    - Platforms and walkways **shall** be free of obstructions & dangerous projections (e.g. extension cords, power cables, hoses, **carts,** boxes, debris).
    - Position equipment to avoid cables crossing pedestrian routes; use cable covers securely fix to surfaces, or consider use of cordless tools.
    - Surfaces in poor repair (i.e. holes, surface upheaval, and broken tiles) **shall** be repaired or guarded by readily visible barricades, rails or other equally effective means.
    - Ensure floor mats and rugs are securely fixed and do not have curling edges.

<u>**Reference #5 - Standards of Care Guidelines**</u>
**For Commercial Floor Maintenance by Johnson Diversey**

- *Remove Clutter from Walkways*
    - Aisles and walkways should be kept free of clutter, including items ready for stocking, deliveries or items misplaced by customers. Pallets and boxes allowed to impinge into the walkway, although sometimes necessary, can be trip hazards.

<u>**Reference #6 – NIOSH Slip, Trip, and Fall Prevention:**</u>

- **Section 3. Indoor Walking Surface Irregularities**

    - Remove, patch underneath, and replace indented or blistered vinyl tile.
    - Remove or repair surface irregularities that can cause a tripping to occur.

<u>**Reference #7 – Loss Prevention Foundation**</u>

**The Loss Prevention Foundation (LPF)** – Internationally recognized organization with a Board of Directors consisting of over 30 well known and established brands within the retail trade industry.  (See LPF Board of Directors Present and Past PDF)

- **LPC 401A Safety**
    - *We invite our customers into our stores and grant them what is largely free and unsupervised access to our products and showrooms.  We allow them to shop at their leisure throughout the selling floor, lifting, moving, sorting, stacking, and shifting merchandise.  We may work around them to meet various store needs*



Retail Litigation Consultants LLC

AMP000327

*during our day-to-day operations. We have to deal with weather issues brought into the store environment such as snow, ice, or rain. We may have to deal with horseplay or unsupervised children. We may have to <u>deal with poor decisions</u> from untrained hands, and <u>poor judgments caused by unfamiliar footsteps</u>. As a result, <u>we therefore must assume the responsibility</u> to promote a safe shopping environment as well as a safe working environment, eliminating hazards and minimizing risks <u>proactively</u> without the same control that we have over our employees. <u>Simple missteps or oversights can create the formula for a minor injury or a potential disaster</u>.*

- **LPC 402C Risk Assessments**

  - *Risk assessment <u>takes into account the probability</u> and <u>nature of an event</u> or occurrence as a result of a specific cause. The risk assessment process attempts to quantify and qualify the nature of the impact and resulting damage for the purpose of justifying possible expenditures associated with or needed in support of mitigation of risk. The goal of conducting a risk assessment is to determine the nature of the potential emergency or event, the severity of the impact to the company's assets and ability to conduct business, and the actions necessary to prevent, mitigate, and/or respond to a given situation. The result of the assessment and the courses of action decided upon will, in all cases, be based on the projected severity of the incident or event.*

  - *Risk assessments are conducted on a regular basis during the course of a year and are based on current intelligence, actual incidents, historical outcomes, and anticipated events. Assessments are revisited, reviewed, and/or revised periodically, or during the short term planning phase when an event is anticipated. More specifically, risk assessments <u>should be done</u> <u>at the onset of significant projects</u> or planned changes that have the potential for <u>resulting in a devastating impact</u> to the stability of the organization.*

## Prelude to Discussion Points –

In review of the case thus far there are some discussion points necessary in order to fully understand the complexity of the situation at hand. In order to gain a better understanding and clarity the following discussions will isolate key points and/or thoughts when compared to what the referenced standards and authoritative references exemplify.

## Discussion # 1 – Risk Assessment

Prior to any activity such as maintenance, stocking, and transporting large quantities of merchandise in a commercial environment, a Risk Assessment must take place by leadership. A risk assessment is part of reference #1's "the risk model." (See figure 1 page 7 of this report) A risk assessment can be dynamic or quite simple. For the purpose of simplicity, in this case, leadership (the manager) should have evaluated the activity and made a determination of what could go wrong.



In this case, there was an activity taking place. The store employees, possibly the manager himself were engaged with stocking or replenishing merchandise displayed on the shelves in each aisle. U Boat carts, aka "U-Boat Trucks" were use at the store to carry out large boxes of merchandise from the back storage areas. The store was stocking shelves while customers were shopping. Thus, there was and is today a predictability that customers may interact and contact the carts and/or merchandise while this process was occurring. Customers contacting the carts was a contingency that should have been addressed by management through training, logistic preparation, and operational awareness.

Carts have and are inherently a hazardous condition if not managed properly. Elderly customers may hurt themselves if a cart containing heavy boxes is in the way of something they want, subsequently they may attempt to move the cart on their own causing injury. Kids tend to play on carts and cause themselves injury. Merchandise on carts can be unstable and fall when left unattended. Carts can themselves become trip hazard, especially carts such as the U-Boat Truck due to the low flat surface area the cart has for carrying boxes.

A proper Risk Assessment in this situation dictates a plan in how to achieve both stocking of merchandise and the safety of customers while doing so. At the conclusion of any assessment there ought to be a plan to negate safety concerns while achieving proper merchandising of the store in order to sell more goods to the public.

- A plan would also direct and isolate activities between both parties:
    - How many employees are helping customers?
    - How many employees are stocking?
    - How do we separate the activity from our guests?
    - How do we avoid leaving merchandise, carts, or boxes (trash) in aisles while people are shopping?
    - How do we avoid blocking merchandise people want to buy?
    - How do we safely use the U-Boat carts?
    - Should the U-Boat carts be on the sales floor?
    - Should we barricade the area if a cart must be on the floor with boxes stacked on it?

Referring to references 1 – 7 the industry has instruction, policies, and methods that address this scenario. The references lay a foundation of what is expected by the industry starting with performing a risk assessment to determine the risks, and then how to treat the risks to prevent an injury event. (See Reference 1- Risk Assessment) (See Reference 7 LPC 402 C Risk Assessment)

## Discussion Point 2 – Separation of Activity

Reference 2 discusses several key concepts all retail managers should understand and consider when performing a risk assessment. These concepts include, but are not limited to:
- The responsibility to control the environment is on the shoulders of the manager or employees, not the customer in almost any situation within reason;
- We (managers within the industry) should never assume our customers will adopt or perceive our logic, rules, or comprehend as we do the risks involved in our environment;
- Low level floor obstacles are the most likely to cause a tripping scenario therefore, more or extra precaution must be taken when problem solving;



- Customers expect aisle walkways to be free of clutter, obstruction, or equipment. This would include entry and corner areas of an aisle. Thus we must be conscientious of these areas and conditions when stocking merchandise and performing maintenance, and;
- If we are going to compromise the afore mentioned general concepts, then we must warn by all means and possibly extra means necessary to avoid an incident from occurring.

Reference 3, 4, & 5 discuss the concept of never leaving equipment, such as carts in a walkway.

Reference 7 discusses a logic adopted by the majority of the retail trade industry. That logic is that dress code, distractions, and poor judgment is inevitable and accepted by the industry. It is NOT a means to excuse poor safety protocols in a retail store. The market is extremely competitive and at the end of the day, most merchants will take a person's cash rather than remove them from the store unless they are being disruptive. Simply put, it is predictable and common place for customers of many variety to enter a store. They come into the store with money to spend and with that they come into the store in all creeds, conditions, ages, and mentalities. It is common place for customers not to wear the best clothing for safety, and to have with them items of distraction such as a cell phone, I-pad, or other device. Further, we in the industry create our own distractions by the way we merchandise, advertise, and place items for them to buy within our stores. For Example, we place the Aisle Numbers with product identification such as "Snacks" up high above the lanes. In doing so, we direct our customers to look up rather than down. Therefore, as the reference states, "*we therefore must assume the responsibility to promote a safe shopping environment as well as a safe working environment, eliminating hazards and minimizing risks proactively without the same control that we have over our employees.*"

The key word in the referenced industry method is "proactively". Proactively - serving to prepare for, intervene in, or control an expected occurrence or situation, especially a negative or difficult one; anticipatory: *proactive* measures against crime.

Thus when we are going use carts to haul boxes of freight merchandise into a sales area, we must prepare for, but not limited to:

- When the cart will be unstable,
- Empty carts,
- Partially empty carts,
- Carts being in the way of customers, or maybe;
- We don't use the carts at all because it is ultimately better to stock one box at a time rather than moving several with a cart that we can't manage well when customers are present.

**Answers to Relevant Questions -**

**As previously stated on page 6 of this report - Relevant questions used to form opinions -**

1) Was there a hazard or hazardous condition present that caused the Plaintiff to fall?
2) If there was a hazard or hazardous condition, was the condition present in such a way that the Defendant should have known about it or remedied it prior to the Plaintiff contacting the condition?
3) Did the Plaintiff act unreasonably prior to and when contacting the hazardous condition if there was one?
4) Did the Defendant adhere to industry standards, best practices, and protocols that the industry recognizes as ways to remedy and negate hazards urgently and reasonably in a shopping environment to prevent incidents such as a slip and fall accident in similar circumstances?
5) Did the Defendant act unreasonably when comparing what the Defendant did or did not due to the measures and practices customarily observed within the industry?



1) Was there a hazardous condition that caused the Plaintiff to fall?

 Answer – YES

The Plaintiff entered a store that was open for business. The store was open for business in order to make money in hopes the Plaintiff would spend her money at the location. The business had control of the property and likely had the knowledge of how to operate a professionally ran shopping environment. The business likely had the ability to maintain the activity occurring safe and train the staff in how to protect all pedestrians from any of the dangers associated with the activity.

Note – there is much discovery yet to be added to the record regarding the conditions at the time of the incident.

That said, based on what is known as of this date and according to the Plaintiff, there was a U-Boat Cart on the sales floor. The cart was at or near the entry way into an aisle. The cart's low level shelf was exposed causing a trip hazard. Subsequently, the Plaintiff stumbled over the cart, causing her to sustain injury. A cart with an exposed low level shelf is a recognized hazardous condition that can easily cause a person to trip. Further, according to the references from the industry, a cart such as the one pointed out by the Plaintiff during a site visit to the store in question should not have been in that condition, nor in that location of the store while customers were shopping without warning or someone in control of the cart. Discussions 1 & 2, as well as the references noted in this report address the reasons that scenario would be improper according to what the industry deems appropriate and acceptable. Therefore, while discovery is ongoing at this time, it is more likely than not, that the cart was the cause of the Plaintiff's trip and fall.

2) If there was a hazard or hazardous condition, was the condition present in such a way that the Defendant should have known about it or remedied it prior to the Plaintiff contacting the condition?

 Answer – YES

The Defendant, as already stated should have properly managed their maintenance activity using a Risk Assessment and then concluding that separation was necessary due to the maintenance occurring. Here however, it appears there was no reason for the cart to be at the entry area of the aisle without warning or being attended to by an employee. According to the Plaintiff, a manager was nearby. Nearby does not constitute control or attending, nor is that a warning. Unattended carts are dangerous. Warnings and attending employees are needed if there is a valid reason or no other means for having a cart with merchandise in a walkway. The industry references overwhelmingly speak to removing such items from walkways unless there is an immediate need.

Consequently a walkway that the Plaintiff likely felt was relatively safe to use at the time she was shopping was not safe. There was a U-Boat cart with boxes missing from the lower platform posing a trip and fall hazard. This cart, likely put there by an employee(s), was precariously in the entry area of an aisle. It was in the same area where most customers entering or approaching would be looking up at the labels and/or number of the aisle they were wishing to look for rather than looking down as they entered the aisle. Simply put, this was a recipe for disaster; any employee should have known better than to leave a cart area during business hours.

As already illustrated there are a number of authoritative references, including the Loss Prevention Foundations own teachings that cite a store's obligation and what is required to maintain a safe environment. Therefore, the Defendant's employees should have known that relying on a minimal



AMP000331

effort, in this case, an assumptive strategy, that the Plaintiff would see it; was not going to satisfy the obligation.

3) Did the Plaintiff act unreasonably prior to and when contacting the hazardous condition?
   Answer – NO

The Plaintiff entered the store during a normal shopping hours. She likely assumed that since the doors were open and the lights were on that the store was in operation and able to service her needs to spend money. The authoritative references and experience tells the industry that shoppers will enter a store in a variety of mindsets, abilities, and physical conditions. This is the up and down side of the industry that Dollar Tree has decided upon to make money to facilitate their businesses. They as with anyone else could elect to close the store down when stocking it or pursue another business model that does not have customers interfering with the stocking processes.

As the references cite the responsibility lies on the business because the business is in a much better position to use and exercise proper judgment and control the activities.

*"We therefore must assume the responsibility to promote a safe shopping environment as well as a safe working environment, <u>eliminating hazards</u> and <u>minimizing risks proactively</u>" Reference: Loss Prevention Foundation – 401A SAFETY*

Separating the customers from the activity eliminates exposure to hazards inherent while stocking merchandise. Using barricades and having one or more employees monitoring by verbalizing the conditions and assisting people is one way. Stocking with smaller carts, or having each employee stock one box at a time is another. Performing Risk Assessments and discussing potential issues with employees, such as stocking merchandise minimizes risks proactively.

Here, based on the Plaintiff's story as to what occurred, there is no evidence that she was acting unreasonably or had any fault in this scenario.

4) Did the Defendant adhere to industry standards, best practices, and protocols that the industry recognizes as ways to remedy and negate hazards urgently and reasonably in a shopping environment to prevent incidents such as a slip, trip, and fall accident in similar circumstances?
   Answer – NO

The Defendants did not adhere to industry standards, best practices, and protocols that the industry recognizes as ways to remedy and negate hazards. A Risk Assessment is a customary and reasonable response prior to engaging in an activity such as stocking merchandise. Separation of activity from customers is a reasonable and customary approach to preventing accidental contact with carts, debris, and boxes while on walkway surfaces. Complying with the aforementioned are actions that demonstrate the standard of care within the industry.

In this case, the Defendant had a U-Boat Cart in use on the sales floor. The cart was left unattended and without warning at the endcap area of entry into a shopping aisle. This same area is an area in which the store prompts customers to look up at signage, rather than down. Everything was wrong with this scenario from an industry standpoint. The cart should not have been there, and it absolutely should not have been in a condition with exposed low level shelving across a walkway. The industry recommends this type of hazard never occur and if it does occur, employees must negate it, attend to it, or somehow warn of it to all approaching customers. Here it appears that did not occur. Therefore, the



Defendant DID NOT adhere to industry standards, best practices, and protocols that the industry uses to remedy and negate hazards in similar circumstances.

5) Did the Defendants act unreasonably when comparing what the Defendant did or did not due to the measures and practices customarily observed within the industry?

Answer – YES

This case is ongoing and discovery has not yet concluded. Based on what is known, the Defendants did not act reasonably when comparing what the industry deems reasonable and customary. The industry takes responsibility for maintaining walkways and separating customers from activities that could cause them harm. The mere fact that the Plaintiff was able to contact a U-Boat cart at the entry of an aisle is troubling. Further, the cart may have had a lower ledge exposed causing a trip hazard. If this was the case, then neither the condition, nor the cart should have been there. Because it was there, and the ledge was exposed, the store did not comply with what the industry deems acceptable. Therefore the defendant acted unreasonably.

**In Conclusion –**

Had the Defendant adhered to the standard of care commonly found throughout the industry it is likely the Plaintiff would not have contacted the dangerous condition. The standard of care requires a risk assessment, separation from contacting an activity with dangers from customers, and proper training of employees to manage such activities.

End of Preliminary Report

As already mentioned Discovery is still occurring. Should more information become available to me, I would like to supplement my report accordingly. My opinions thus far are based on my experiences, my tenure in the retail industry, my continued education in Risk Management, and the documents I have reviewed for this case thus far.

Dated: July 5, 2015

John Peterson
Retail Litigation Consultants LLC



EXHIBIT 2



# Retail Litigation Consultants

### Curriculum Vitae
### John Peterson

**Personal Data:**    **John R. Peterson**
**City:**

**North Las Vegas, NV 89032**
**YOB:**        **1970**
**POB:  Montevideo MN**
**Telephone:    702-321-1981**
**Email: retail-litigation-consultants@cox.net**

## Summary of Expertise in the following areas:
- Risk Management / Loss Prevention
- Safety Management
- Safety Committee Management
- Safety Program Management
- Safety Action Planning
- Safety Personal Protection Equipment
- Security Management
- Shoplifter Apprehension
- Investigations
- Emergency Planning Procedures
- Evacuation Procedures
- Responding to Accidents
- Incident Investigation and Review
- Standard of Care
- Retail Industry Standards
- Hospitality Industry Standards
- Notice and Constructive Notice

## Professional Experience & Experience as an Expert

- **Qualified Expert to Testify and meets the requirements under Rule 702**
  **Honorable Eileen S. Willett – Superior Court of Arizona**
  **MARICOPA COUNTY CV 2012-070937 12/04/2013**
  **Case of Taylor v Wal-Mart Stores Inc.**
  **(Slip and Fall) Motion in Limine Denied by Judge and so Ordered**

Last Updated 5/15/15

AMP000334



# **Retail Litigation Consultants**

- o **Qualified Expert to Testify in the area of Standard of Care within the Retail Industry United States District Court Judge Kent J. Dawson Jan 30th 2012 Case: Ferrerya v. Target Corporation Case # United States District Court Case No. 2:10-cv-01870-KJD-LRL (Slip and Fall) Motion in Limine Denied by Judge and So Ordered**

- o **Currently – Loss Prevention Area Manager HMSHost International 11/2007 – Present Date (Safety/Security Related) Fulltime Occupation**

- o **MAPM – Market Asset Protection Manager Wal-Mart Stores 2005 – 2007 (Safety/Security Related) Designated 30 (b) (6) (Person most Knowledgeable) for Wal-Mart Stores**

- o **LPRC – Loss Prevention Risk Coordinator Wal-Mart Stores 2003 – 2005 (Safety/Security Related)**

- o **Lead Loss Prevention Associate – Wal-Mart Stores 1995 - 2003**

- o **Loss Prevention Associate – Wal-Mart Stores 1994 – 1995(Safety / Security Related)**

- o **Loss Control Associate – Kmart Stores 1992-1993**

- o **Loss Prevention Agent – Carson Peirie Scott Department Stores 1992 -1993**

- o **1990-1992 United States Navy – Safety/Troubleshooter VFA 113 Rank AMS2 (AW) (Safety Related)**
  - ▪ **Part time Security Officer Registered with the State of California**
  - ▪ **Part time Security Officer for the IRS Building Fresno CA**
  - ▪ **Part time Security Officer for Angel De LaGuardia Security**
  - **Note -This work was on a part time basis while serving active duty in the military**

- o **1988-1990 United States Navy**

- o **1987-1988 Jack and Jill Grocery Stores – Stockman and Clerk**

- o **1985-1987 Hill Street Grocery Store – Delivery Clear and Butcher Shop Attendant**

- o **1983-1985 John Peterson Photography Studio Clerk**

- o **1983-1985 Sweet Message Candy Store Clerk**

AMP000335



# Retail Litigation Consultants

Expert's Biography -
I have worked in businesses indicative to having customers and employees throughout
my career.  My expertise is derived from an accumulation of experience, training, and
adult education.

At an early teenage age I began working in grocery stores part-time and was exposed to
service standards known then and still used today within many well-known businesses.
Once graduating high school, I was formally introduced to Safety and Security while
serving in the United States Navy.

While serving in the US Navy, the Navy designated me as a Safety Petty Officer in
charge of maintaining safety standards for a squadron with ten F/A 18 fighter aircraft.  As
an additional required duty, US Navy assigned me the position of Assistant Squadron
Duty Officer in charge of security of both aircraft and facilities.  A recipient of the Navy
Achievement Medal, Good Conduct Medal, and promoted twice meritoriously.  Upon my
honorable discharged, I began my career in safety and security under the umbrella what is
known as Loss Prevention within well-known retail stores.

Loss Prevention in many cases is symbiotic or comparable to a corporation's Risk
Management and sometimes the Human Resources Department.  However, there are
cases where Loss Prevention and Risk Management are defined as two separate
departments both managing the safety and security of an organization.  In most cases
when the two departments are separated, Risk Management will manage and mitigate
claims while the Loss Prevention Department teaches, trains, and prevents claims from
occurring.  When claims do occur, Loss Prevention typically investigates the claims and
provides findings to Risk Management.

While working for retail stores, and for corporations such as HMSHost, Wal-Mart, and
K-mart I have responded to, investigated, and reviewed hundreds of accidents and
investigations.  In addition, I have taught numerous classes and performed on the job
training to hundreds of management and employees.

While working for Wal-Mart Stores Inc., my managing area consisted of twenty two (22)
stores consisting of approximately (400) associates per store overseeing Asset
Protection/Security and Safety.  Currently, while employed at HMSHost I manage as a
regional support role in multiple airports and shopping malls consisting of both retail and
restaurant stores spanning from the Mid-West, West Coast and Internationally in Canada.

Last Updated 5/15/15

AMP000336



# Retail Litigation Consultants

I have developed, edited, and drafted safety, risk, and loss prevention related material for corporate use reaching over 33,000 employees in the United States and internationally. Topics such as Manager in Training, Orientation, and Accident Investigation are among the most frequent training curriculum. Within the curriculum taught and presented are techniques, application, and skills that are customary within many business models all goal oriented to manage a safe commercial business environment. I train all levels of employees within corporate entities in the areas of accident prevention, accident response, and accident review.

Currently, I am attending Nevada OSHA SCATS (Occupational Safety & Health Administration and Safety Consultation and Training Section) training through the State of Nevada. At the completion of this training curriculum I will have an option of seeking a designation as an Associate in Safety and Health Practitioner through the Institute for Health and Safety Management (ISHM). Through OSHA, I have attended and completed OSHA 30 hour and OSHA 10 hour courses in addition to the various courses offered by SCATS composing of multiple hours in training and education in the areas of industrial health and safety.

I am also enrolled in the Loss Prevention Foundation's LPC course study as a means to achieve my LPC designation. The LPC course study is an extensive course for loss prevention professionals consisting of over 80 hours of advanced study in the field of loss prevention. There are six courses consisting of 31 modules of nearly 1200 pages of text.

As an extracurricular development and training opportunity I am an Assistant Instructor for Strategic Liability Advisors LLC. This organization conducts seminars and workshops in multi course substance in security and risk management for participants that are preparing to sit in on national examinations to acquire their own certifications. The purpose of these programs is to assist participants, to include myself, in specialized subject matter within courses that have multiple chapters of material and content. Through this organization I am able to collaborate with other experts, attorneys, and sitting judges, all whom are invaluable resources with vast knowledge in their perspective areas.

When I am not working, I am volunteering for my community as a member of the Red Rock Search and Rescue Organization, a 501c3. I currently hold the rank within the organization of Deputy Commander. This organization formed in 2012, when a hiker went missing in the Las Vegas area. As a commander of over 250 members, Safety is at the forefront of mission planning, tactical operations, and team leadership. Responders



# Retail Litigation Consultants

operate under the term "Scene Safety" which is a subject that is taught for all responding situations.

Since joining Red Rock Search and Rescue in 2012, I have been Nationally Certified as a Rescue Technician II, Technician I, and as an instructor/evaluator and participate in frequent training and instruction in areas.  While obtaining nationally recognized certifications, I am qualified to teach over 200 members of RRSAR and members of many communities.  I am certified through ASHI, (American Health and Safety Institute) as an Instructor for First Aid, CPR, and Blood Pathogens.  I am certified through the American Heart Association to teach First Aid, CPR, and Blood Pathogens.  I have experience as a SAFETY OFFICER during search missions, trainings, and person extraction.  I am also certified to teach wilderness first aid.

Through experience, training, and participating in rescue curriculum I have found a direct correlation between my working profession and search and rescue volunteering.  The basics of risk management/loss prevention are outlined and frequently discussed in educational text from both disciplines.  Scene safety, planning for hazards, hazard identification, hazard response, accident investigation and response are repeated topics of training throughout search and rescue, as they are in the retail trade and service industries.   Therefore, I am able to apply the merits to both areas on a regular basis to include applying the standard of care to both disciplines'.

I have organized, designed, and managed public events housing the Mayor of Las Vegas, U.S. Congressmen, City Council Members, the Sherriff of Las Vegas Metro Police, and other VIP/Dignitaries in attendance.   In the management of such events; hazards, safety, and security have been subject matters of concern requiring my skills to manage and include in the planning to make these events successful and safe for all who attended them.

In summary, I am a manger of safety and loss prevention.  As a practitioner of my craft, I am able to deconstruct and analyze what occurred with respect to an accident or event.  Then I am able to determine whether or not parties involved acted reasonably based on what the industry constitutes a proper response to the given situation.

AMP000338



# Retail Litigation Consultants

## Product Development of Safety Equipment/Personal Protective Equipment

As a practitioner in the industry I have a unique perspective and on occasion am able to assist in the development and engineering of tools used to protect employees and customers.   The Big Mini Cone is an example of what became from analyzing a problem throughout my areas of responsibility.  Crew Safe Inc. saw the idea and now have this item in their inventory.

## Crew Safe Inc. – Big Mini Popup Cone

- **Through working with Crew Safe I developed a quick solution to the warning of customers and employees when a hazard is noticed and restrictions are present complicating the guarding process**
- **This tool is carried by employees on their belts to enable them to immediately warn of a hazard.**
- **This items available through purchase internationally and throughout the United States**

| **PRODUCT INFORMATION** Product: | the big MINI® Caution Sign | the big MINI® Carrying Pouch |
|---|---|---|
| Category: | Safety | Safety |
| Item Stock No.: | **SP1048** | **SP1048-P** |
| UPC Number (C.U.): | 6 18206 05301 | 6 18206 05401 |
| **Pack Information** | | |
| Item / Stock No.: | | **Big Mini® Pack / SP1048** |
| UPC Number (Pack): | | 6 18206 15501 |
| Retail Pack: | | 4 Signs + 1 Carrying Pouch in clear 4 mil sealed poly bag |
| Pack: | | Master Case = 50 bagged retail packs |
| Gross Case Weight: | | 25 lbs (11.34 kg) |
| Dimensions: | | 29 x 12 x 11.5 inch (29 x 30.3 x 29.3 cm) |
| CU. FT. Per Case: | | 2.32 ft3 |
| Minimum Order Size: | | 1 Case |



https://www.crewsafe.com/caution-safety-cones-with-pouch-4-signs-with-pouch

Last Updated 5/15/15

AMP000339



# Retail Litigation Consultants

**Quoted from Spellbound Inc. Letter of Appreciation -**

John Peterson was instrumental in the specification and design of a slip/trip/fall solution intended to help employees immediately mark a spill at the moment it is noticed.  This quick recognition and marking capability reduces the time between when a spill occurs and when it is marked and cleaned up by the employees.  Cutting the lag time linking notice and marking and clean up can be critical for companies when managing the legalities surrounding slip, trip, and fall injuries.

## Public Speaking

- **Las Vegas Valley Paralegal Association's 2015 Annual Seminar**
  **April 18, 2015 – Work Place Violence Presentation – Safety Committees**
  **Roles of employees and employers 1 Hour**
  - Safety Committees
  - Safety Committee notes and meeting scribing
  - Safety Committee structure and management
  - Evolution of OSHA
  - OSHA Reporting

- **Big Data & Surveillance: Applications Across Verticals**
  **ISC West Show Las Vegas, NV Thursday, April 3, 2014**
  **Presenter / Speaker 1 Hour**
  - Data Trends and Data Gathering
  - Exception Reporting and Analyzing the Data
  - Applications of Big Data Surveillance

- **Red Rock Building Ceremony – Project Manager/Speaker**
  - **Speaking Topic – Leadership 1 Hour**
    - Traits of a Leader
    - What makes a good Leader
    - Leadership Vision
    - Leadership Execution

  - **VIP Audience in attendance**
    - ➢ Mayor Carolyn Goodman
    - ➢ Congressman Dr. Joe Heck
    - ➢ Undersheriff Joseph Lombardo
    - ➢ Jack Finn – Dean Heller's Office

AMP000340



# Retail Litigation Consultants

- **2011 RIMMS Regional Conference Las Vegas NV**
  - **Prevention SOPs for reducing Accidents  1.5 Hours**
    - Planning
    - Hazard Recognition
    - Hazard Assessment
    - Creation of SOPs to prevent Hazardous Situations
    - Use of SOPs throughout business operations

  - **Customer Accident Investigation and Review 1.5 Hours**
    - Accident Response
    - Gathering statements
    - Interviewing witnesses
    - Scene assessment
    - Scene documentation
    - Executive or Summary Accident Review Reporting
    - Determining Root Causes
    - Follow-up to Prevent Reoccurrence of circumstances

- **IAFCI - (International Association Financial Crimes Investigators)**
  **2007 National Conference Las Vegas 1 Hour**
    - Gift Card Fraudulent Circumstances
    - Gift Card Profiling
    - Tracking Gift Cards, Purchases, and Points of Sale
    - Re-use of Gift Card activity

<u>**Published Work or Pending Articles**</u>
  - **Litigation Management Magazine**
    **(Article Published June 2012 Summer Edition)**
    - **Article – Total Quality – Root Cause Analysis, Data Trends and the Impact on Claim Exposure**
  - **Security Magazine (Issue Submitted and Pending)**
    **Article - Customer Accident Root Cause Analysis**
  - **Safety Exchange (Issue Submitted and Pending)**
    **Article – Safety SOP's**

<u>**Certifications/Training**</u>

- **OSHA 30 Hour General Industry Completion**
- **OSHA 10 Hour General Industry Completion**
- **NASAR Instructor for MLPI (Managing Lost Persons Incident)**

Last Updated 5/15/15

AMP000341



# Retail Litigation Consultants

- **NASAR Instructor/ Lead Evaluator for SAR Tech III, II, and I**
- **NASAR Tech I**
- **NASAR Tech II**
- **ASHI WFA Instructor Certification**
- **ASHI Baby Sitting CPR/First Aid Instructor**
- **AHA CPR/First Aid Instructor**
- **ASHI CPR/First Aid Instructor**
- **First Responder**
- **First Aid/CPR**
- **HMSHost MIT**
- **HMSHost Symphony Micros Systems Certificate**
- **HMSHost Safety MIT Training**
- **HMSHost MIM Management Training**
- **Wal-Mart University Completion**
- **Walton Institute Completion**
- **W-Z Basic/Advanced Interviewing Training Certificates**
- **Wal-Mart Hand Cuff Training Completion**
- **Wal-Mart Licensed Operator**
- **Wal-Mart Loss Prevention Training and Completion**
- **W-Z Advanced Interviewing Certificate 2010**
- **W-Z Phone Interviewing Certificate July 2010**
- **W-Z Phone Interview Advanced Training Certificate April 2011**

## Related Equipment Knowledge in Risk Management / Loss Prevention

- **Hand Cuff Certified**
- **CPR / First Aid Certified**
- **Ultrak/ Honeywell Multiplex CCTV systems**
- **Camera (Covert, Stationary, and Pan Tilt Zoom) placement use, and installation**
- **Low Voltage CCTV Wire and Blueprint Design**
- **Lifts, Machinery, and use of equipment in Retail or Warehouse environments**
- **Parking Lot Patrol Services Management and Related Directives**
- **California Consumer Affairs Certificates Handcuff, Pepper Spray, PR 24,**
- **Handgun Carry Certified California Consumer Affairs**
- **Graduate of Montevideo Senior High School**
- **CCSN Curriculum Completion of Physiology and English I and II**



# Retail Litigation Consultants

## Knowledge of Policies and Procedures of Past and at Present Date

- HMS Host International Policies and Procedures
- Wal-Mart Stores Loss Prevention/Asset Protection and Safety  92-2007
- Wal-Mart Compliance and Regulatory Procedures and Policies
- Wal-Mart Stores Management Training Program
- Wal-Mart Stores Hazmat Programs
- Wal-Mart Stores Operations and Procedures
- Camera System Installation Wal-Mart Stores 15+ Stores in AZ, Cal, NV, and UT
- Point of Sale Systems Exception Reporting and Report Analysis
- Over 2000 Public Record Prosecuted Internal Employee and Shoplifter Convictions
- CVS Stores Policies and Procedures
- Walgreens Policies and Procedures
- Safeway Policies and Procedures
- Albertson's Policies and Procedures
- Ross Dress for Less Policies and Procedures
- Target Asset Protection Policies 92 - 2011
- Kmart Loss Control and Safety Policies 92-2009
- Macy's Loss Prevention Policies 96 - 2000
- Nordstrom's Loss Prevention and Safety Polices 2003 -2005
- Mervyn's Asset Protection Policies 92 - 2002

## Organizations and Affiliations

Red Rock Search and Rescue – Volunteer Deputy Commander Officer and Member

Strategic Advisors LLC – Associate Instructor - Professional Teaching and Training

CLM – Counsel on Litigation Management (Fellow)
- Retail, Restaurant, & Hospitality Premises Liability Committee
- Insurance Fraud Committee
- Litigation Management Magazine Subcommittee
-
RIMS – Risk Industry Management Society (Non - Member)

ASIS – American Society for Industrial Security - a professional security organization www.asisonline.org (Member)

Loss Prevention Foundation (Member)



# Retail Litigation Consultants

## Publications and Subscriptions Routinely Read

**Litigation Management Magazine**
**Security Magazine**
**Bulk Retail**
**Safety Exchange**

## Professional Safety/Security Training Taught or Presented

**Wilderness First Aid Certification Class 20 Hours Instructor - April 13, April 20, and April 25 2015 – Course Development 10 Hours**

- First Aid Basics and Advanced
- CPR/AED
- Wound Care
- Standard of Care
- Scene Safety
- Hazard Recognition Patient Packaging
- Hazards and Wilderness Splinting

**"Meet up" Hikers American Heart Institute First Aid/CPR training April 19, 2015 6 Hours**

- Risk Management – Scene Safety
- CPR/AED
- First Aid Splinting
- Triage and Transporting

**Las Vegas Valley Paralegal Association's 2015 Annual Seminar April 18, 2015 – Work Place Violence Presentation – Safety Committees Roles of employees and employers 1 Hour**

- Safety Committees
- Safety Committee notes and meeting scribing
- Safety Committee structure and management
- Evolution of OSHA
- OSHA Reporting

**Red Rock Search and Rescue NASAR (National Association of Search and Rescue) Academy March 08, 2015 7 Hours**

- What is the Standard of Care
- Ethics regarding responders
- Legal issues for responders
- Trespassing for responders
- Risk Management for Team Leaders and Incident Command
- Wilderness Survival
- Picking a location to stay the night
- Emergencies

Last Updated 5/15/15

AMP000344



# Retail Litigation Consultants

**Red Rock Search and Rescue NASAR (National Association of Search and Rescue) Academy March 07, 2015 5 Hours**

- Risk Management
- Back Country Lightning Safety
- Back Country Hot and Cold Exposures
- Team Leader and Team Safety

**Subaru "Share the Love" Fundraiser Event Dec 20, 2014 – Community Event Presenter of Hiker Safety, 10 Essentials to Safety Hiking, First Aid, CPR 6 Hours**

- o Preplanning the hike and risk management
  - ▪ Where, when, who knows where we are going?
  - ▪ Emergency Plan
  - ▪ First Aid
  - ▪ Supplies
- o CPR Demonstration and Hands on Training
- o First Aid Demonstration and Hands on Training

**Red Rock Search and Rescue NASAR 4 Week Academy: November 12 2014 Text Reference: Fundamentals of Search and Rescue (FUNSAR) NASAR, 2005 Edition Chapter 4 – Legal and Ethical aspects of SAR – Standard of Care – Class Presenter 4 Hours**

- o What is the Standard of Care
- o Ethics regarding responders
- o Legal issues for responders
- o Trespassing for responders
- o Risk Management for Team Leaders and Incident Command
  - o Wilderness Survival
  - o Picking a location to stay the night
  - o Emergencies

**Henderson Community Expo 2014 – October 17, 2014**
**Red Rock Search & Rescue - John Peterson Event Coordinating Officer 10 Hours**

- Search & Rescue Best Practices
- Wilderness first aid and readiness
  - o Hiking safety
  - o Backpack lists
  - o CPR
  - o Vehicle safety
- Map &compass
- Outdoor safety & survival
- Hug a Tree – Child Safety Survival Methods
- Sand Box Man Tracking



# Retail Litigation Consultants

**Las Vegas Metro Police Department Training - Testifying and Report Writing - Associate Instructor – August 21, 2014 w/Jeff Segal Attorney General's Office, and D.A. Nichter CPP, ARM – Guest Speaker Judge Douglas Smith 8 Hours**
- Video Case Scenarios
- Report Writing
- Court Preparation


**Las Vegas Metro Police Department Training - Testifying and Report Writing - Associate Instructor – March 13, 2014 w/Jeff Segal Attorney General's Office, and D.A. Nichter CPP, ARM – Guest Speaker Judge Douglas Smith 8 Hours**
- Video Case Scenarios
- Report Writing
- Court Preparation

**First Aid/CPR/AED – Blood-Borne Pathogens Training to West Haven Las Vegas, NV March 15, 2014 - 25 Students and Staff Certified 7 Hours**
- Blood Bourne Pathogens – what are they and how to prevent exposure
- Written Testing Administration and grading
- First Aid
  - Risk Management and Scene Safety
  - Bleeding and Personal Protective Equipment
  - Choking
  - Splinting
  - Treating Shock
- CPR/AED – Adult, Children, Infants

**Red Rock Search and Rescue – Keith Goldberg and Ron Kirk Training Center Ceremony and Building Dedication 2/8/14 – Project Manager 12 Hours**
- Premises Safety Planning
- Security VIP Planning
- Property Inspection Regimen Design and Execution
- Restroom Maintenance Regimen

**Las Vegas Metro Police Department Training - Testifying and Report Writing - Associate Instructor - August 22nd, 2013 w/Jeff Segal Attorney General's Office, and D.A. Nichter CPP, ARM 8 Hours**
- Video Case Scenarios
- Report Writing
- Court Preparation

AMP000346



# Retail Litigation Consultants

**HMSHost Safety Meeting McCarran Airport - Instructor - First Aid 8/19/13 2 Hours**

- Risk Management / Scene Safety
- Impalements
- Burns
- Heat and Cold Exposures

**Blood-Borne Pathogen, First Aid, CPR & AED - Instructor - Summerland Hospital Las Vegas, NV 8/18/13 - Sponsored by Red Rock Search and Rescue 6 Hours**

- Blood Bourne Pathogens – what are they and how to prevent exposure
- Written Testing Administration and grading
- Risk Management scene safety and hazards
- First Aid
  - Bleeding and Personal Protective Equipment
  - Choking
  - Splinting
  - Treating Shock
  - Unresponsive Person
- CPR/AED – Adult, Children, Infants

**The Las Vegas Valley Paralegal Association's 2013 Seminar - Presenter/Panel Expert 4/20/13 1 Hour**

- Working with Experts
- Emailing Experts
- Role of an Expert
- Expert Panel Participant Q&A

**Las Vegas Metro Police Department Training - Testimony and Report Writing Associate Instructor - December 10th, 2012 w/Jeff Segal Attorney General's Office, and D.A. Nichter CPP, ARM (8 Hours)**

- Video Case Scenarios
- Report Writing
- Court Preparation

**Basic Map and Compass Instructor - November 10th, 2012 - Presentation and OJT in the Field 8 Hours**

- Risk Management and Safety
- Map and Compass Orientation
- Declination Navigation
- Compass Use



# Retail Litigation Consultants

**Henderson Community Safety Expo - October 27, 2012 - Senior Safety Observer and Climb Wall Safety Spotter for Boy Scouts of America (10 Hours)**
- Climbing Ropes and Hazards
- Harness Awareness
- Slip Trip & Fall Awareness
- Wind Gusts and Crisis Management

**Las Vegas Metro Police Departmental Training – Scam Bible/Adult Beverage and Quick Service – Instructor March 8, 2012 Airport PSU Training Room (2 HRS)**
- Failing to Ring Sales
- Drink Manipulation
- Tip Hustles
- Credit Card Tip Scams
- Comprehensive Theft Case
- Embezzlement Case

**Las Vegas Metro Police Departmental Training – Testimony and Report Writing Associate Instructor – March 7th 2012 w/Jeff Segal Attorney General's Office, Judge Douglas Smith, and D.A. Nichter  8 Hours**
- Video Case Scenarios
- Report Writing
- Court Preparation

**Las Vegas Metro Police Departmental Training – Testimony and Report Writing Associate Instructor – September 29th 2011 w/ Jeff Segal Attorney General's Office, Judge Douglas Smith, and D.A. Nichter CPP 8 Hours**
- Video Case Scenarios
- Report Writing
- Court Preparation

**Oakland International Airport / HMSHost – Safety Meeting 2Hours – Facilitator August 2011**
- Safety Surveys
- Hazard Identification
- Hazard Awareness

**Oakland International Airport / HMSHost – Safety Meeting 2Hours – Facilitator July 2011**

**Las Vegas Metro Police Department – Testimony and Report Writing Associate Instructor – May 2nd, 2011 8 Hours**
- Video Case Scenarios
- Report Writing
- Court Preparation

AMP000348



# Retail Litigation Consultants

## <u>Professional Training Obtained and/or Attended</u>

**State of Nevada SCATS – OSHA – Emergency Evacuation Completion May 14, 2015 3 Hours**

**State of Nevada SCATS – OSHA- Respirator Regulation Completion April 30, 2015 3 Hours**

**Las Vegas Paralegal Annual Seminar 2015 – Attended 8 Hours – April 18, 2015**
- Ethics
- Work Place Violence
- Safety Committees – Presenter
- Counterfeit and Piracy
- Electronic Data and Transmission

**Mechanical Advantage Training Feb 2, 2015 – Attended 4 Hours**
- Risk Management with Ropes
- Stokes Basket Tie in
- Z-rig Assembly 3 to 1
- Belay System for Decent

**OSHA 30-Hour General Industry Outreach Program Completion – Jan 30, 2015**

**OSHA 10-HOUR State of Nevada Completion – Dec 10, 2014**

**National Association of Search and Rescue (NASAR) MLPI (Managing a Lost Person Incident) Instructor/Course Completion December 12, 2014 (40 Hours)**

**National Association of Search and Rescue (NASAR) Search and Rescue Instructor and Evaluator Course Completion December 12, 2014 (4 Hours)**

**NASAR Search and Rescue Technician I Certification Academy Completion December 11, 2014**

**State of Nevada – OSHA 10 HR General Industry (Dec 9 & 10) Certificate of Completion**

**National Workers' Compensation and Disability Conference Expo November 12, 2014.  Attendee – Las Vegas NV**

AMP000349



# **Retail Litigation Consultants**

**Community Emergency Response Team Training (CERT) – November 2 2014**

**State of Nevada SCATS – OSHA – Personal Protective Equipment Regulatory Review – Participant – Certificate 10/30/14**

**State of Nevada SCATS – OSHA – Material Data Sheets Participant – Certificate 10/29/14**

**State of Nevada – Safety and Consultation Training – Hazard Communication Awareness Training – Certificate 8/12/14**

**Hospitality Crisis Management Summit UNLV - Participant – June 12th, 2014 Terror Attacks, Catastrophe/Natural Disaster Planning Event**

**State of Nevada SCATS – OSHA Self Inspections Participant – Certificate 5/1/14**

**State of Nevada SCATS – OSHA Work Place Violence Awareness Participant – Certificate 4/17/14 4 Hours**

**Department of Business and Industry – Workplace Evaluation & Management Tools Class Completion – 4/7/14 – Certificate**

**State of Nevada SCATS – OSHA Standards, Regulations, and Code training – Participant – Certificate 4/2/14**

**Off Road Bike Training Skills FTX – March 30, 2014 6 Hours Bike Safety, Bike Repair, Skills riding exercise – Instruction by Las Vegas Cyclery**

**Loss Prevention Foundation LPC Professional Designation Course Currently enrolled and attending online classes**

**Red Rock Search and Rescue 4x4 off Road Training FTX 2/9/14**

**National Workers' Compensation and Disability Conference & Expo Nov 20th 2013**

**RRSAR Urban Mountain Bike Training and Testing Completion - Safe Urban Rider Qualification August 11th, 2013**

**National Association of Search and Rescue Certification Testing - July 26th - July 28th - Completed NASAR Certification Levels II and III - NASAR Certified Tech II**

Last Updated 5/15/15

AMP000350



# Retail Litigation Consultants

**Hospitality Crisis Management Summit - Participant - May 30th, 2013**
**On site shooter, Terror Attacks, Catastrophe/Natural Disaster Planning Event**
- Having a Plan
- Prepared Living
- Shelter in Place

Summit Focuses on Preparing for a Crisis
*Submitted by 8 News NOW (/profile/91329/8-news-now)*
*Friday, May 31st, 2013, 10:24am*
- Topics: News (/news/news) Interview with John Peterson

"Emergencies can happen at a flip of a switch and it's about pre-planning on what to do," said John Peterson with Red Rock Search and Rescue.

**American Safety and Health Institute Instructor Course - Participant - May 19th, 2013 - Tested and Certified**

**American Safety and Health Institute Instructor Course - Participant - May 12th, 2013 - Tested and Certified**

**RRSAR Mountain Bike Safety and Repair Clinic - Participant - May 4th, 11th, and 18th, 2013 Las Vegas Cyclers Shop**
- Bike Safety and Risk Management
- Trail Safety
- Breaking
- Stopping on Hills

**LVVPA 2013 Seminar - Rules of Civil Procedure - Participant April 20th 2013**

**REI - Beyond Physical Security Seminar - March 8th & 9th, 2013 - Participant**

**Mechanical Advantage Basics Training FTX - March 7th, 2013 - Participant**

**Gear Talk Class Red Rock Search and Rescue - March 6, 2013 - Participant**

**Wilderness Overnight Survival Training - October 20th, 2012 - Participant**
**Tested and Signed Off Training Card**

**Man with a Gun MOCK search Training - September 15th, 2012**
**Attendee/Participant**

**Technical Rescue Training - September 9th, 2012 - Attendee**

**First Aid and CPR Responder Training - July 28th, 2012 - Attendee and Participant**

Last Updated 5/15/15

AMP000351



# Retail Litigation Consultants

**Counsel on Litigation Management – Open and Obvious Defense Webinar February 29th 2012 – Attendee 2 Hours**

**Counsel on Litigation Management – Litigation 101 Parts 1 & 2 Oct 6th 2011**

**RIMS Western Regional Conference – Attendee Oct 2011**

**HMSHost HR Seminar St. Louis: Global Compliance, Safety, Workman's Comp Claims, Social Media – Attended Sept 2011**

**Rethink Your Security Technology Strategy: Transform your Operations with High-Tech, High-Value Options Date: September 8, 2011 Time: 2pm ET / 1pm CT / 11am PT – Completed**

**ASIS Webinar Featuring Lowes CCTV Systems with Guest Speaker Lowes Director of Loss Prevention – Completed July 2011 2Hours**

**ASIS Physical Security CPP Workshop Completed 4/21/11**

**Wicklander-Zulawski & Associates – Advanced Interview and Interrogation Techniques Training Completion March 17th, 2011**

**Webinar Training – Fisher and Philips OSHA Inspections Completion – October 2010**

**Webinar Training – Fisher and Philips OSHA Record Keeping Completion – September 2010**

**ARM (Associate in Risk Management) Training 30 Hours Completed ARM (54) 7-20-10**

**STATE OF NEVADA – RESTAURANT SAFETY Completion 12-2-10**

**STATE OF NEVADA – WRITTEN WORKPLACE SAFETY PROGRAM – Completion 10-28-09**

**STATE OF NEVADA – OFFICE STAFETY HAZARD RECOGNITION Completion 10-14-09**



# Retail Litigation Consultants

**STATE OF NEVADA – SAFETY – FUNDAMENTALS OF ACCIDENT INVESTIGATION**
**Completion 8-11-10**

**STATE OF NEVADA – SAFETY COMMITTEES – GETTING STARTED**
**Completion 7-13-10**

**HMSHost Loss Prevention Manager OJT and Training**
**Completion 12 – 2007**

**HMSHost Magic in the Middle Train the Trainer**
**Completion 4 – 2008**

**HMSHost Adult Beverage Train the Trainer Training**
**Completion 7 – 2008**

## Real World Incidents and Crisis Management Scenarios

### Incident Commander – May 16, 2015 Missing Person's Search for Steve Koecher
- Command of Six Teams
- 1 K9 Asset
- 1 ATV Asset
- Command Post Assets
- 1 Medical Asset
- News Public Information Officer – Interviewed by News 13
- Safety Brief for Deployment of Assets
- Crisis Management
- Crisis Administration

### Incident Commander – April 3 - 4 2015 Missing Airman Mt Charleston
- Command of Six Teams
- 2 K9 Assets
- Command Post Assets
- Family Liaison
- News Public Information Officer – Interviewed by News 8 and News 13
- Safety Brief for Deployment of Assets
- Crisis Management
- Crisis Administration

### Missing Person Search – Team Leader Mentor March 24, 2015 5.5Hours
- Team Leader Safety



# Retail Litigation Consultants

- Team Safety
- Desert Survival – finding Water

**Missing Person's Exercise Jan 31, 2015 Gass Peak Las Vegas, NV – Incident Commander for Red Rock Search and Rescue**

**Las Vegas Rock and Roll Marathon December 2nd, 2012 - Senior Safety Observer/Medical Responder Medical Tent**
- 7 Medical Response Incidents

**Warrior Dash October 20th, 2012 - Senior Safety Observer/ Medical Responder - Fire Pit and Finish Line**
- 17 Medical Response Incidents
- 1 Rope Water/Mud Rescue

AMP000354

EXHIBIT 3



# Retail Litigation Consultants

## Cases of testimony: for John Peterson

**Defendant's PMK (Deposition and Trial)**
C Lewis v. Wal-Mart Stores Inc.; Wackenhut of Nevada, Inc.
Case # A514759          Feb13th, 2007 (Parking Lot Homicide)
_____

**Defendant's PMK Deposition**
Hendricks v. Wal-Mart Stores Inc.
Case # 2:06-cv-01439 Sept 24th, 2007 (Slip and Fall)
_____

**Expert for Plaintiff Deposition**
Athow V. Wal-Mart Stores Inc.
Case # 2:08-cv-00643-PMP-GWF July 17th, 2009 (Struck by Machine)
_____

**Expert for Plaintiff Deposition**
Karen Thedford v. Wal-Mart Stores Inc.
Case # CV-(Clark County District Case #A579206; Dept No XXV (Slip and Fall)
_____

**Expert for Plaintiff Deposition**
Betty Brue v. Wal-Mart Stores Inc.
Case # No: 2:09-cv-00585-KJD-RJJ (Slip and Fall)

_____

**Expert for Plaintiff Deposition**
Carbullido v. Wal-Mart Stores Inc.
US District Court Case #2:09-cv-02329 (Forklift Accident)
_____

AMP000355



# **Retail Litigation Consultants**

**Expert for Plaintiff Deposition**
Stacy Morgan v. Wal-Mart Stores Inc.
U.S. District Court Case 2:10-cv-00443-GMN-PAL (Slip and Fall)

_____

**Expert for Plaintiff Deposition**
Case: Evangie E. Quinton v Wal-Mart Stores Inc.
Case# A606958 Dept XVI     May 10th, 2011 (Slip and Fall)

_____

**Expert for Plaintiff Deposition**
Case: Baltodano vs Defendant Wal-Mart Store 5070
Case #United States District Court Case No. 2:10-cv-02062-JCM-RJJ May 17th, 2011 (Slip and Fall)

_____

**Expert for Plaintiff Deposition**
Case: Thurgood v Wal-Mart Store 3473
Case # A-10-624918-C Dept 11 Sept 12, 2011 (Slip and Fall)

_____

**Expert for Plaintiff Deposition**
Case: McLendon v Costco Wholesale Corporation
Case # A607803 Dept XIX Sept 29th, 2011 (Trip and Fall)

_____

**Expert for Plaintiff Deposition**
Case:  Sandra Hernandez v. Wal-Mart Stores Inc
Case# A-10-614163-C Dept II Dec 2nd, 2011 (Slip and Fall)

_____

**Designated Expert for Plaintiff Deposition**
Case: Dunn v. Wal-Mart Stores Inc.
Case# 2:12-cv-01660-GMN-VCF March 12th, 2013 (Slip and Fall)

_____

AMP000356



# **Retail Litigation Consultants**

**Designated Expert for Plaintiff Deposition**
Case: KAYLEEN SHAKESPEAR v. Wal-Mart Stores Inc.
Case# 2:12-cv-01064-MMD-PAL April 22nd, 2013 (Slip and Fall)
_____

**Designated Expert for Plaintiff Deposition**
Case: Riddle v. Wal-Mart Inc. and USM Inc. and Belton Marketing Enterprises Inc. dba Flagstaff Snow Removal
Case# P1300CV201100214 May 14th, 2013 (Slip and Fall - Ice)
_____

**Designated Expert for Plaintiff Deposition**
Case of: Urban McConnell v. Wal-Mart Stores
Case# 2:12-cv-01601-RCJ-PAL May 20th, 2013 (Slip and Fall)
_____

**Designated Expert for Plaintiff Deposition**
Case of: Ronald Picard v. Wal-Mart Stores
Case# 2:12-cv-01907-RCJ-PAL June 15th, 2013 (Struck by/ Trip and Fall)
_____

**Designated Expert for Plaintiff Deposition**
Case of: Evelyn Wilson v. Wal-Mart Stores
Case# 3:12-CV-782-DPJ-FKB September 24th, 2013 (Slip and Fall)
_____

**Designated Expert for Plaintiff Deposition**
Case of: Nicole Weikle vs. Wal-Mart Stores Inc. Store #2838
Case No.: 2:13-CV-00749-JCM-PAL October 28th, 2013 (Slip and Fall)
_____

**Designated Expert for Plaintiff Deposition**
Case of: Emma Melgar -Diaz v Kmart Stores Inc.
Case# A-11-653209 November 19th, 2013 (Slip and Fall)
_____

AMP000357



# **Retail Litigation Consultants**

**Designated Expert for Plaintiff Deposition**
Case of: Carmelita M. Soto v 99 Cent Only Stores
Case No. A- 11-635818 – C Dept. No.: XXVI (Slip and Fall)
—————————————————

**Designated Expert for Plaintiff Deposition**
Case of: Lenee Ann Lander v Simon Property Group
Cause No. D-1-GN-12-003269 December 27th, 2013 (Assault with Injury Premises Liability)

—————————————————

**Designated Expert for Plaintiff Deposition**
Case of: Kirkland v Valley Enterprises
Case: No. A-12-664074-C DEPT NO.: III April 10th, 2014 (Employee Slip and Fall)
—————————————————

**Designated Expert for Plaintiff Deposition**
Case of: Bobby White v Wal-Mart Stores Inc.
Case Civil Action NO. 251-12-992CIV   June 19, 2014 (Slip and Fall)
—————————————————

**Designated Expert for Plaintiff and Deposition**
Order by Honorable EILEEN S. WILLETT Superior Court of Arizona
Qualified Expert
Case of: Julie Taylor v Sam's Club/Wal-Mart Stores Inc.
Case: No.: CV2012-070937 July 3, 2014 (Slip and Fall)
—————————————————

**Designated Expert for Plaintiff Deposition**
Case of: Theresa Smith v Wal-Mart Stores Inc.
Case: No.: 2:13-cv-01597-MMD-VCF August 4, 2014 (Slip and Fall)
—————————————————

**Designated Expert for Plaintiff Deposition**
Case of: Sandra Schneider v Walgreens Co.
Case No.: 2:13-cv-01518-MMD-CWH August 27, 2014 (Slip and Fall)
—————————————————

AMP000358



# Retail Litigation Consultants

**Designated Expert for Plaintiff Deposition**
Case of: Rayborn v. Boy Scouts of America
Case No. 120700081 October 28, 2014 (Wrongful Death and Injury from Lightning Strike)
_____

**Designated Expert for Plaintiff Deposition**
Case of: Bonney Ryan v Venetian Casino Resorts LLC
Case No. A-12-668099-C Department No. : XXII January 13, 2015 (Slip and Fall)
_____

**Designated Expert for Plaintiff Deposition**
Case of: Daisy Shannon v Wal-Mart Stores Inc. and Melvin Stubs
Civil Action No. 3:14cv265-DPJ-FKB January 16, 2015 (Slip and Fall)
_____

**Designated Expert for Plaintiff Deposition**
Case of: Denise Wayne Plaintiff, vs Jerica Ashbaugh; Wal-Mart Stores, Inc. Defendants
Case No. 2:13-cv-01248 March 25 and May 4, 2015 (Slip and Fall)
_____

AMP000359

EXHIBIT 4



# Retail Litigation Consultants

### 2015 Fee Schedule

**Retainer Fee:**              $1600.00

**Document Review and General Consulting work: $160 per hour**

**Deposition Testimony Fee Rate $325.00 per hour –**
> **PREPAYMENT NOTICE and important actions needed: <u>the deposing party must provide expert with an anticipated time in hours needed for deposition IN WRITTEN FORM OR DIGITAL FORM.</u> If Deposing Party fails to provide such information ahead of time or at least within 3 days, the expert WILL PLAN 3 hours from the time stated on deposition notice and will expect payment of 3 hours billable deposition time.  Payment will be due prior to the deposition commencing.  Should deposing party need more time, the Expert agrees to remain on site for an additional 30 minutes, or another deposition can be scheduled using the same terms for second deposition.  <u>Due to multiple appointments and calendar events the expert does not guarantee the ability to stay longer than 3 hours + 30 minutes if no prior time commitments are requested as stated.</u>**

> **Cancellation Fee – Deposition fees are subject to forfeit without 72 hours (3 Days) prior notice of cancellation.**

> **NOTICE – If payment in full is NOT received at time of Deposition a $100 fee will be applied to invoice to compensate expert for additional administrative time for billing and follow-up.**

**Trial Testimony:**           $325 per hour
                               (2 Hour Minimum)

**Arbitration Testimony**      $250 per hour
                               (2 Hour Minimum)

**Arbitration Consulting Packages Starting at $600 – Custom packages available!**

**Trial/Arbitration Preparation:**    $160.00 per hour
                                      (2-hour minimum)

**Meeting/Telephone Conferences:**    $160 per hour
                                      (1-hour min)

**Review of Reports, Evidence, Documents and Document Preparation:**
                               $160 per hour
                               (1-hour minimum)

**On Site Inspection Fees: $160.00/ hour (2 hour minimum)**
     **$.60 per mile if over 30 miles to location + Travel Time Billable Hours**

**Travel and Travel time billed – outlined and agreed upon at the time of retention and specified in retention agreement**

**All cancellations of scheduled appointments without 24 hours' notice subject to $160 cancellation fee.**
                               **\*\*\*All fees apply to Defendant and Plaintiff work\*\*\***

Last Updated 6/15/15

AMP000360



# Retail Litigation Consultants

**Advisory:**
**Due to full time employment obligations to include out of state travel, weekly physical on site attendance, and part time consulting, production time and volunteer work, scheduling for depositions are limited to 1 pm through evening hours on (Week Days). Saturdays and Sundays 9am – 6pm are also available.**

**Deposition Terms:**

- <u>**Deposing Party will identify start and approximate finish times of deposition thru the Notice of Deposition and/or Subpoena or in writing via email documentable form – The needed time must be known to the Expert prior to the Deposition Date for planning purposes at minimum of 3 days. This needed time will be billable time whether it is used or not used by the Deposing Party.**</u>

- **The Deposing Party agrees to send payment to applicable retained law firm to be forwarded at least three days prior to the scheduled date of the Noticed Deposition with estimated time commitments for the deposition paid in full or have the payment ready at time of deposition having notified retained law firm in writing or email that the check will be ready upon arrival.**

- **Should Expert arrive to the deposition and receive no payment, the Deposition will not commence.  Billing for 3 hours will be invoiced to include a $100 fee for time and follow-up billing practices.**

- **An invoice for payment will be available upon request at the commencing of any deposition.**

- **Cancellation of depositions**

  - **Must be at least three days (to include weekends) in order to provide the Expert time for productive work and/or other appointments to be rescheduled**
  - **If cancelled within three days, all payments are forfeited and will count as time billed by Expert for the scheduled time and appointment**
  - **A cancelled deposition will be considered billable time. If payment exceeds two hours no additional fees will apply. If payment is less than two hours, billing will be invoiced for the difference up to two hours of billing time at deposition rate.**

- **Rescheduling of depositions or additional dates**
  - **Will comply with the aforementioned terms**
  - **Will not exceed two days in the same week unless agreed upon**
  - **Will not be consecutive days during daytime business hours unless agreed upon by Expert**
  - **These additional rescheduling terms are to protect production time and employment obligations each week. These terms are not intended to be evasive, and as always, evenings and weekend dates (Sat & Sun) are available if there is an immediate need. Thus if consecutive deposition dates become necessary, the Expert agrees to meeting the next evening after hours to complete any deposition requirement.**

- **All other fees and billing are set forth in Retention Agreement and Terms.**

**Thank you for the opportunity to work with your firm. We appreciate your business!**

Last Updated 6/15/15

AMP000361